# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Dec 10, 2020
OFFICE OF THE CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
INFORMATION MAINTAINED BY GOOGLE WHICH IS )
RELATED TO AN INVESTIGATION INTO ILLEGALLY )
HARVESTED DEER IN THE HSNP )

Case No. 6:20cm34

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Certain records and information stored at a premises controlled by Google which is related to an investigation into illegally harvested deer in the Hot Springs National Park in October of 2020, described further in Attachment A hereto.

located in the _____Western_____ District of _____Arkansas_____, there is now concealed *(identify the person or describe the property to be seized)*:

Described in Attachment B hereto.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 36 CFR 2.2(a)(1); & | - Wildlife Protection |
| 36 CFR 2.4(2)(b)(1)(iii) | - Weapons, traps, & nets |

The application is based on these facts:
See attached Affidavit in Support of An Application for Search Warrant

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Jeffrey Johnson (telephonically)
*Applicant's signature*

Jeffrey Johnson, Chief Deputy Ranger
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12-10-20

City and state: ~~Hot Springs~~ Texarkana, AR

*Judge's signature*

United States Magistrate Judge Barry A. Bryant
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE INVESTIGATION OF ILLEGALLY HARVESTED DEER IN THE HOT SPRINGS, ARKANSAS, NATIONAL PARK AND SEARCH OF INFORMATION THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE | **FILED UNDER SEAL**<br><br>Case No. 6:20cm34 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, United States Park Ranger Jeffrey Johnson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a warrant to search information that is stored at premises controlled by Google, an electronic communication service and remote computing service provider headquartered in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a warrant under 18 U.S.C. § 2703(c)(1)(A) to require Google to disclose to the government the information further described in Attachment B.I. The government will then review that information and seize the information that is further described in Attachment B.II.

2. I am a US Park Ranger with the National Park Service, and I have been since 2002. I am currently stationed at Hot Springs National Park and have worked as a Law Enforcement Officer in Hot Springs for 18 years. I have received training at the Federal Law Enforcement Training Center (FLETC) in Glynco, GA, where I was trained to investigate numerous types of crimes including resource crimes such as violation of wildlife protection statutes. In my tenure at

Hot Springs National Park, I have investigated numerous resource crimes including offenses involving wildlife resources.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 36 CFR 2.2 (a) (1) Wildlife protection and 36 CFR 2.4 (2) (b) (1) (iii) Weapons, traps, and nets. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

## JURISDICTION

1. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. Specifically, the Court is a District Court of the United States that has jurisdiction over the offense(s) being investigated as defined by 18 U.S.C. § 2711(3)(A)(i).

## BACKGROUND RELATING TO GOOGLE AND RELEVANT TECHNOLOGY

2. Based on my training and experience, I know that cellular devices, such as mobile telephone(s), are wireless devices that enable their users to send or receive wire and/or electronic communications using the networks provided by cellular service providers. Using cellular networks, users of many cellular devices can send and receive communications over the Internet.

3. I also know that many devices, including but not limited to cellular devices, have the ability to connect to wireless Internet ("wi-fi") access points if the user enables wi-fi connectivity. These devices can, in such cases, enable their users to send or receive wire and/or electronic communications via the wi-fi network. A tablet such as an iPad is an example of a device that may not have cellular service but that could connect to the Internet via wi-fi. Wi-fi

access points, such as those created through the use of a router and offered in places like homes, hotels, airports, and coffee shops, are identified by a service set identifier ("SSID") that functions as the name of the wi-fi network. In general, devices with wi-fi capability routinely scan their environment to determine what wi-fi access points are within range and will display the names of networks within range under the device's wi-fi settings.

4. Based on my training and experience, I also know that many devices, including many cellular and mobile devices, feature Bluetooth functionality. Bluetooth allows for short-range wireless connections between devices, such as between a device such as a cellular phone or tablet and Bluetooth-enabled headphones. Bluetooth uses radio waves to allow the devices to exchange information. When Bluetooth is enabled, a device routinely scans its environment to identify Bluetooth devices, which emit beacons that can be detected by devices within the Bluetooth device's transmission range, to which it might connect.

5. Based on my training and experience, I also know that many cellular devices, such as mobile telephones, include global positioning system ("GPS") technology. Using this technology, the device can determine its precise geographical coordinates. If permitted by the user, this information is often used by apps installed on a device as part of the apps' operation.

6. Based on my training and experience, I know Google is a company that, among other things, offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Nearly every device using the Android operating system has an associated Google account, and users are prompted to add a Google account when they first turn on a new Android device.

7. In addition, based on my training and experience, I know that Google offers numerous apps and online-based services, including messaging and calling (e.g., Gmail, Hangouts,

Duo, Voice), navigation (Maps), search engine (Google Search), and file creation, storage, and sharing (*e.g.*, Drive, Keep, Photos, and YouTube). Many of these services are accessible only to users who have signed in to their Google accounts. An individual can obtain a Google account by registering with Google, and the account identifier typically is in the form of a Gmail address (*e.g.*, example@gmail.com). Other services, such as Maps and YouTube, can be used with limited functionality without the user being signed in to a Google account.

8. Based on my training and experience, I also know Google offers an Internet browser known as Chrome that can be used on both computers and mobile devices. A user has the ability to sign-in to a Google account while using Chrome, which allows the user's bookmarks, browsing history, and other settings to be uploaded to Google and then synced across the various devices on which the subscriber may use the Chrome browsing software, although Chrome can also be used without signing into a Google account. Chrome is not limited to mobile devices running the Android operating system and can also be installed and used on Apple devices and Windows computers, among others.

9. Based on my training and experience, I know that, in the context of mobile devices, Google's cloud-based services can be accessed either via the device's Internet browser or via apps offered by Google that have been downloaded onto the device. Google apps exist for, and can be downloaded to, devices that do not run the Android operating system, such as Apple devices.

10. According to my training and experience, as well as open-source materials published by Google, I know that Google offers accountholders a service called "Location History," which authorizes Google, when certain prerequisites are satisfied, to collect and retain a record of the locations where Google calculated a device to be based on information transmitted to Google by the device. That Location History is stored on Google servers, and it is associated

with the Google account that is associated with the device. Each accountholder may view their Location History and may delete all or part of it at any time.

11. Based on my training and experience, I know that the location information collected by Google and stored within an account's Location History is derived from sources including GPS data and information about the wi-fi access points and Bluetooth beacons within range of the device. Google uses this information to calculate the device's estimated latitude and longitude, which varies in its accuracy depending on the source of the data. Google records the margin of error for its calculation as to the location of a device as a meter radius, referred to by Google as a "maps display radius," for each latitude and longitude point.

12. Based on open-source materials published by Google and my training and experience, I know that Location History is not turned on by default. A Google accountholder must opt-in to Location History and must enable location reporting with respect to each specific device and application on which they use their Google account in order for that usage to be recorded in Location History. A Google accountholder can also prevent additional Location History records from being created at any time by turning off the Location History setting for their Google account or by disabling location reporting for a particular device or Google application. When Location History is enabled, however, Google collects and retains location data for each device with Location Services enabled, associates it with the relevant Google account, and then uses this information for various purposes, including to tailor search results based on the user's location, to determine the user's location when Google Maps is used, and to provide location-based advertising. As noted above, the Google accountholder also has the ability to view and, if desired, delete some or all Location History entries at any time by logging into their Google

account or by enabling auto-deletion of their Location History records older than a set number of months.

13. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google accountholder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

14. Based on my training and experience, I know that when individuals register with Google for an account, Google asks subscribers to provide certain personal identifying information. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, this information often provide clues to their identity, location, or illicit activities.

15. Based on my training and experience, I also know that Google typically retains and can provide certain transactional information about the creation and use of each account on its system. This information can include the date on which the account was created, the length of service, records of login (*i.e.,* session) times and durations, the types of service utilized, the status

of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, Google often has records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the account.

## PROBABLE CAUSE

16. On October 8, 2020, US Park Ranger C. Negrette discovered a dead, male, white tailed deer on the driveway of 527 Spring Street, Hot Springs, Arkansas. This location is within the boundary of Hot Springs National Park.

17. Later on October 8, 2020, I examined the deer and determined that the animal had been shot with an archery implement such as a compound bow or crossbow. A wound near the left shoulder was small and round while the wound on the opposite side of the chest was much larger. Based on my knowledge and experience, the injury patterns observed are consistent with an arrow or bolt tipped with an expanding, mechanical broadhead. This type of broadhead is fired from a bow or crossbow with its' blades tucked into their body and when they strike a target, such as a deer, the blades expand in such a fashion that a large wound channel is established. This broadhead is designed to quickly and humanely kill game animals such as white-tailed deer limiting their ability to travel very far.

18. Continuing on October 8, 2020, I requested the assistance of the Arkansas Game and Fish Commission canine to locate any blood trail or arrow. Although no arrow was located on this date, a blood trail was found leading investigators to the lawn of 607 Spring Street, Hot Springs, Arkansas where the blood trail appears to have begun. This location is also within the

boundary of Hot Springs National Park. The lawn of 607 Spring Street is elevated from the Spring Street roadway by more than 10 feet and bordered by Hot Springs National Park on three sides.

19. On October 18, 2020, US Park Ranger J. Bradbury was on uniformed patrol within the boundary of Hot Springs National Park when he was flagged down by a citizen. The citizen directed Bradbury to a deceased white-tailed deer lying in Whittington Park which is within Hot Springs National Park. US Park Ranger J. Bradbury located a deceased female white tailed deer at the location within Whittington Park. US Park Ranger J. Bradbury noted that the deer had a small wound near its' left shoulder and a large wound near its neck and chest area. This wound was consistent with an archery implement. US Park Ranger J. Bradbury observed a blood trail ending approximately 50 yards east of the deer's body within Whittington Park in an area nearly across the street from the Hot Springs National Park maintenance building.

20. On October 19, 2020, National Park Service-Investigative Services Branch Special Agent R. Slencak reviewed video surveillance from the Hot Springs National Park maintenance building. Special Agent R. Slencak observed a vehicle with its' brake lights illuminated traveling eastbound on Whittington Avenue at 05:33:29 on October 18, 2020. Although the vehicle was out of the camera's view, Slencak briefly observed a steady red hue in the upper right edge of the video frame indicative of a stationary vehicle's brake lights. Slencak observed two unknown subjects come into view of the camera; one with a flashlight and one with an unknown linear object in a vertical position. The subject with the flashlight was illuminating an area inside of Whittington Park. The subject with the linear object raised the object horizontally to their right shoulder. Under the illumination of the other subject's light, a shorter linear object became apparent resting on top of the longer object. This smaller linear object appeared to be in direct line with the subject's face and appeared to be an optical sight or scope. The flashlight's illumination also made visible a

protrusion from the left side of the large object and two distinct terminal points. The optical sight or scope, dual terminal points, protrusion and method of aiming are all consistent with a modern crossbow which is known to fire a shortened arrow commonly called a "bolt.' After a few seconds, the subject with the long object lowered it into a vertical position and both subjects moved westward out of camera view. At 05:36:10 both subjects exited the view of the camera in a westbound direction. At 05:37:28 both subjects left the view of the camera and continued east bound on Whittington Avenue.

21. On October 21, 2020, I performed a search of Whittington Park to find any evidence related to the incident in Whittington Park. I located a crossbow bolt bearing the brand name of "Juggernaut" with red and white fletching and a fixed broadhead in the creek within Whittington Park. The location of this bolt was consistent with the expected trajectory of the bolt fired at the deer on October 18, 2020.

22. Based on my training and experience, I know that Android mobile phones are very commonly carried by citizens of Hot Springs, Arkansas and the surrounding areas. I also know commonly carried mobile phones have highly capable digital cameras able to take high quality images, even in low light and that both lawful and unlawful hunters frequently photograph their harvest with such devices so they can preserve and share proof of their success.

23. Based on the foregoing, I submit that there is probable cause to search information that is currently in the possession of Google and that relates to the devices that reported being within the Target Location described in Attachment A during the time period described in Attachment A for evidence of the crime(s) under investigation. The information to be searched includes (1) identifiers of each device; (2) the location(s) reported by each device to Google and

the associated timestamp; and (3) basic subscriber information for the Google account(s) associated with each device.

24. The proposed warrant sets forth a multi-step process whereby the government will obtain the information described above. Specifically, as described in Attachment B.I:

   a. Using Location History data, Google will identify those devices that it calculated were or could have been (based on the associated margin of error for the estimated latitude/longitude point) within the Target Location described in Attachment A during the time period described in Attachment A. For each device, Google will provide a anonymized identifier, known as a Reverse Location Obfuscation Identifier ("RLOI"), that Google creates and assigns to device for purposes of responding to this search warrant; Google will also provide each device's location coordinates along with the associated timestamp(s), margin(s) of error for the coordinates (*i.e,.* "maps display radius"), and source(s) from which the location data was derived (*e.g.*, GPS, wi-fi, bluetooth), if available. Google will not, in this step, provide the Google account identifiers (*e.g.,* example@gmail.com) associated with the devices or basic subscriber information for those accounts to the government.

   b. The government will identify to Google the devices appearing on the list produced in step 1 for which it seeks the Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices.

   c. Google will then disclose to the government the Google account identifier associated with the devices identified by the government, along with basic subscriber information for those accounts.

25. This process furthers efficiency and privacy by allowing for the possibility that the government, upon reviewing contextual information for all devices identified by Google, may be able to determine that one or more devices associated with a Google account (and the associated basic subscriber information) are likely to be of heightened evidentiary value and warrant further investigation before the records of other accounts in use in the area are disclosed to the government.

## CONCLUSION

26. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c).

27. I further request that the Court direct Google to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

28. Additionally, the government asserts it will take all necessary steps to protect any information collected pursuant to the warrant associated with innocent third parties. Such steps may include not causing said information to be further disseminated and only maintaining the seized information relevant to this investigation as identified by the government.

## REQUEST FOR SEALING

29. I further request that the Court order that all papers in support of this application, including the affidavit and warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

/s/ Jeffrey Johnson (telephonically)
JEFFREY JOHNSON
Chief Deputy Ranger
United States National Park Service
Hot Springs Division

Subscribed and sworn to before me on this 10th day of December, 2020

HON. BARRY A. BRYANT
United States Magistrate Judge
Western District of Arkansas

## ATTACHMENT A

### Property To Be Searched

This warrant is directed to Google LLC and applies to:

(1) Location History data, sourced from information including GPS data and information about visible wi-fi points and Bluetooth beacons transmitted from devices to Google, reflecting devices that Google calculated were or could have been (as indicated by margin of error, *i.e.*, "maps display radius") located within the geographical region bounded by the latitudinal and longitudinal coordinates, dates, and times below ("Initial Search Parameters"); and

(2) identifying information for Google Accounts associated with the responsive Location History data.

### INITIAL SEARCH PARAMETERS

#### SEARCH PARAMETER 1:

- **Date:** October 7, 2020

- **Time Period (including timezone):** 10:00 PM to 11:59 PM CDT

- **Target Location:** Geographical area identified as:

| Pin | Latitude | Longitude |
|---|---|---|
| North East | 34.51318 | -93.04741° |
| South East: | 34.5126 | -93.04717° |
| South West | 34.51237° | -93.04799° |
| North West | 34.51273 | -93.04807° |

- **Time Restriction:** Devices that reported their location as being within the Target Location on the date and during the time period above for a <u>minimum of one (1) minute and/or for a maximum of thirty (30) minutes</u>.



Figure 1: Google map vicinity of 607 Spring St. Hot Springs, AR 71901

## SEARCH PARAMETER 2:

- **Date:** <u>October 18, 2020</u>

- **Time Period (including timezone):** <u>05:00 AM to 06:00 AM CDT</u>

- **Target Location:** Geographical area identified as:

    o

| PIN | Latitude | Longitude |
|---|---|---|
| Whittington Park NE | 34.51519° | -93.06896° |
| Whittington Park SE | 34.51509 | -93.06893 |
| Whittington Park SW | 34.515 | -93.06997 |
| Whittington Park NW | 34.51522 | -93.07001 |

- **Time Restriction:** Devices that reported their location as being within the Target Location on the date and during the time period above for a <u>minimum of two (2) minutes</u>.



Figure 2: Google map vicinity of Whittington Park, Hot Springs, AR 71901

## ATTACHMENT B

### Particular Items to Be Seized

I. **Information to be disclosed by Google**

The information described in Attachment A, via the following process:

1. Google shall query location history data based on the Initial Search Parameters specified in Attachment A. For each location point recorded within the Initial Search Parameters, and for each location point recorded outside the Initial Search Parameters where the margin of error (*i.e.*, "maps display radius") would permit the device to be located within the Initial Search Parameters, Google shall produce to the government information specifying the corresponding unique device ID, timestamp, location coordinates, display radius, and data source, if available (the "Device List").

2. The government shall review the Device List and identify to Google the devices about which it seeks to obtain Google account identifier and basic subscriber information. The government may, at its discretion, identify a subset of the devices.

3. Google shall disclose to the government identifying information, as defined in 18 U.S.C. § 2703(c)(2), for the Google Accounts associated with each device ID appearing on the Device List about which the government inquires.

## II. Information to Be Seized

All information described above in Section I that constitutes evidence of violations of 36 CFR 2.2 (a) (1) Wildlife protection and 36 CFR 2.4 (2) (b) (1) (iii) Weapons, traps and nets have been committed between the dates of on or about October 7th through 18th, 2020 involving unknown person(s).

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by or an authorized agent of Google, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of Google. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

    a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Google, and they were made by Google as a regular practice; and

    b.    such records were generated by Google's electronic process or system that produces an accurate result, to wit:

        1.    the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Google in a manner to ensure that they are true duplicates of the original records; and

    2.    the process or system is regularly verified by Google, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____      _____
Date                                         Signature